INTERNATIONAL DETECTIVE SER-
VICE, INC., **Plaintiff-Appellant,**

v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN & HELPERS OF AMERI-
CA, LOCAL 251 et al., **Defendants-Ap-
pellees.**

No. 79–1264.

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1979.

Decided Feb. 6, 1980.

Morris J. Levin, Providence, R.I., with whom Paul J. Pisano and Almonte, Lisa & Pisano, Providence, R.I., were on brief, for appellant.

Richard M. Peirce, Providence, R.I., with whom Roberts, Carroll, Feldstein & Tucker, Providence, R.I., was on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, CLARKE,* District Judge.

CLARKE, District Judge.

This appeal arises from the district court's ordering arbitration of certain disputes between the parties when it granted an injunction pursuant to *Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). A brief review of the events preceding the district court's order will clarify the issues on appeal.

On October 25, 1978, one McCarthy, an employee of appellant-company, International Detective Service, Inc., was discharged for refusing an order to work. The company agreed to arbitrate this discharge in accordance with its collective bargaining agreement. On November 8, 1978, two days before arbitration, union members refused to work until McCarthy was reinstated. The company obtained a temporary restraining order (TRO) on November 14, 1978, in accordance with *Boys Markets, Inc. v. Retail Clerks Local 770, supra*. This TRO was extended until March 1, 1979, by agreement in a consent order. However, on December 13, 1978, and subsequently, the company issued letters to the union stating that, as a result of the November wildcat strike, the contract between the company and the union was no longer in effect and would not be recognized.

On March 1, 1979, the district court entered an order granting the company's motion for a preliminary injunction. The district court's March 1st order not only ex-

tended the injunction but required the company to arbitrate: (1) the discharge of McCarthy; (2) the discharge of twenty-four employees resulting from the November wildcat strike; and (3) a contract grievance of one D'Allesandro, which had been filed on January 18, 1979. Neither the union nor the company had made a request for an order that these last two issues be arbitrated. Finally, on April 26, 1979, the district court denied the company's motion to modify the March 1st order by deleting the arbitration requirement for all but the McCarthy discharge. Appellants now appeal from this order of April 26, 1979, which appeal was filed on May 8, 1979.

The issues on appeal are, first, whether the company's appeal was timely, and, if it was, whether the district court exceeded its jurisdiction in ordering arbitration of the three disputes listed above when it granted the continuation of the *Boys Markets* injunction. The basis of the argument in regard to this latter issue is that the discharge of the twenty-four employees and the D'Allesandro grievance were not the cause of the wildcat strike that precipitated the original *Boys Markets* injunction and that the parties did not request arbitration of these two matters.

## I.

The appellee-union argues that the appellant-company failed to file a timely notice appealing the March 1, 1979, order of the district court. Appellant did file promptly, however, a motion to modify the March 1st order, which motion was denied on April 26, 1979. The company then filed an appeal on May 8, 1979, twelve days following the denial of the motion to modify.[1]

The record supporting the district court's order of March 1, 1979, is limited. There is no reference to a dispute over the discharg-

---

* Of the Eastern District of Virginia, sitting by designation.

1. Jurisdiction of this appeal from an order in response to a motion to modify or dissolve an injunction is conferred by 28 U.S.C. § 1292(a)(1), with Rule 4, Fed.R.App.P., establishing a 30-day time limit for filing the notice of appeal. The time limit runs from the date of the entry of the order in response to the motion.

es of twenty-four employees, although there is a limited reference to claims of D'Allesandro. The record does not contain any motion or request by the union that the court order these matters sent to arbitration. Moreover, the record contains no argument on the facts or law underlying that part of the order requiring arbitration of these matters.

Therefore, the arguments presented to the district court in the company's motion to modify were necessarily "new," in that they had not theretofore been presented to the court for its consideration prior to its order of March 1, 1979. The district court never suggested that the argument in support of modification failed to raise new matters not theretofore presented to it, or was repetitive of arguments before the court prior to issuing its order of March 1, 1979.

The union's reliance on the case of *Stiller v. Squeez-A-Purse Corp.*, 251 F.2d 561 (6th Cir. 1958), is inappropriate. In *Stiller*, the district court had stated that the appellant's two motions to rescind an injunction were nothing more than additional memoranda in opposition to the original motion for an injunction. 251 F.2d at 562–63. In the present case, the company promptly submitted a motion to modify, not a motion to rescind, and the motion to modify did present "new" matters to the district court.[2] Therefore, we conclude that the appeal herein was filed timely.

**2.** *See generally* 9 *Moore's Federal Practice* at ¶ 110.20[2] & cases cited therein (2d ed. 1975).

**3.** This section provides in pertinent part:
   No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
   (a) Ceasing or refusing to perform any work or to remain in any relation of employment; . . . .

**4.** This section provides in pertinent part:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or be-

## II.

In *Boys Markets, Inc. v. Retail Clerks Local 770, supra,* the Supreme Court reconsidered the availability of injunctive relief in labor disputes and overruled *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), a case in which the court had refused to grant the employer injunctive relief against a union's strike over an arbitrable dispute under the contract. Section 4 of the Norris-La Guardia Act, 29 U.S.C. § 104 (1970),[3] prohibits federal injunctive relief in labor disputes. The Court reasoned, however, that section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1970),[4] which confers jurisdiction on the federal district courts to hear suits involving violations of collective bargaining agreements, created an exception to the anti-injunction provisions of the Norris-La Guardia Act. 398 U.S. at 252–54, 90 S.Ct. at 1593–1594, 26 L.Ed.2d at 211–212. The exception is a narrow one, though, and three prerequisites for obtaining injunctive relief must be met: (1) the collective bargaining agreement must contain mandatory arbitration procedures; (2) the strike to be enjoined must be over an arbitrable grievance; and (3) "ordinary principles of equity" must warrant the injunctive relief. *Id.* at 253–54, 90 S.Ct. at 1593–1594, 26 L.Ed.2d at 211–212.

In the present case, all of these prerequisites were met. The contract contained a

tween any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
Prior to *Boys Markets,* the Supreme Court held that the above section of the LMRA permits federal courts to fashion substantive labor law through enforcement of arbitration clauses in collective bargaining agreements. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–918 (1957) (court granted union's request for specific performance of collective bargaining agreement provision of mandatory arbitration). In *Boys Markets,* then, the Court confronted the conflict between the injunction prohibition of § 4 of the Norris-La Guardia Act and § 301 of the LMRA.

mandatory arbitration clause, and the strike arose over an arbitrable grievance. In regard to the third prerequisite, the district court is charged with balancing the equities and fashioning a remedy which is fair to all of the parties. This is precisely what occurred in the district court. In continuing the March 1, 1979, *Boys Markets* injunction, the district court ordered arbitration of all the arbitrable disputes then existing between the parties. The district court did not exceed its jurisdiction under *Boys Markets*. The enjoined strike had arisen over a mandatory arbitrable grievance, and nothing in the *Boys Markets* decision requires the district court to limit an arbitration order issued in conjunction with the injunction (i. e., the *quid pro quo*) to the causing grievance. Rather, the district court, in "balancing the equities," determined that all of the arbitrable grievances between the parties should be submitted for arbitration if the *Boys Markets* injunction was to be continued and effective.

The Supreme Court has consistently emphasized and promoted federal policy which encourages peaceful settlement of labor disputes through compelling arbitration under collective bargaining agreements. *See Boys Markets, Inc. v. Retail Clerks Local 770, supra*, 398 U.S. at 252–53, 90 S.Ct. at 1593–1594, 26 L.Ed.2d at 211–212. Moreover, in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Court permitted the district court to exercise broad discretion in fashioning a remedy for enforcement of arbitration provisions of a collective bargaining agreement:

> Plainly the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike. Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way.

> To be sure, there is a great medley of ideas reflected in the hearings, reports,

and debates on this Act. Yet, to repeat, the entire tenor of the history indicates that the agreement to arbitrate grievance disputes was considered as *quid pro quo* of a no-strike agreement. And when in the House the debate narrowed to the question whether § 301 was more than jurisdictional, it became abundantly clear that the purpose of the section was to provide the necessary legal remedies.

353 U.S. at 455, 77 S.Ct. at 917.

Here the district court compelled arbitration under the contract, and appellant's argument that the contract was no longer in force is without merit. The company cannot rely on the contract initially to obtain the *Boys Markets* injunction and then renounce it in challenging the breadth of the *quid pro quo* for continuation of that injunction. The company's December 13, 1978, renunciation of the contract was without effect in the context of the *Boys Markets* injunction that the company received. The district court had inherent power in "balancing the equities" to require that all of the arbitrable grievances between the parties be submitted to arbitration, thereby ensuring the effectiveness and viability of its order to continue the *Boys Markets* injunction.

We are of the opinion that the district court did not exceed its jurisdiction under *Boys Markets* in requiring the company to arbitrate the two matters which did not give rise to the strike but were mandatory arbitrable matters under the contract between the parties. *The judgment of the district court is affirmed.*